[No. 13387.   In Bank. — November 19, 1891.]

HENRY JANIN, RESPONDENT, *v.* THE LONDON AND SAN FRANCISCO BANK, APPELLANT.

BANKS AND BANKING — DEPOSITS — IMPLIED CONTRACT — CHECKS — PAYMENTS — ORDER OF DEPOSITOR. — A bank in receiving ordinary deposits becomes the debtor of the depositor, and its implied contract with him is to discharge the indebtedness by honoring such checks as he may draw upon it, and it is not entitled to debit his account with any payments except such as are made by his order or direction.

ID. — UNAUTHORIZED PAYMENTS — FORGED CHECKS — NEGLIGENCE OF DEPOSITOR. — All unauthorized payments, such as upon forged checks, are made at its peril, and it is not justified in charging them against the depositor's account unless some negligent act of his in some way contributed to induce the payment in the first instance, or unless, by his subsequent conduct in relation to the matter, he is upon equitable principles estopped to deny the correctness of the payments.

ID. — ESTOPPEL — SUBSEQUENT NEGLIGENCE — PREVENTION OF BANK'S ACTION. — If there is no prior negligence of the depositor contributing to induce the payment of a forged check, in order that his subsequent negligence may estop him from disputing the payment and authorize the

bank to debit him with the amount of such check, it must appear that by such negligence the bank has omitted to take proceedings which it otherwise would and could have taken to indemnify itself from loss.

Id. — Balancing of Pass-book — Duty of Depositor — Account Stated — Burden of Proof — Forgery of Debited Check. — The balancing by a bank of a depositor's pass-book, and its return to him at the same time, constitutes a statement of the account between himself and the bank, and it is the duty of the depositor to examine the same within a reasonable time, and to give the bank notice of any objection he has to it, and if he does not do so it becomes an account stated; and the depositor has the burden of proving that a check with which he was debited was a forgery.

Id. — Unreasonable Acquiescence in Stated Account — Prejudice to Bank — Estoppel. — If the circumstances attending the entire transaction are such as to make it reasonably probable that the bank has suffered prejudice by the depositor's unreasonable acquiescence in the account as stated, he will not be permitted to open the account by proof of its incorrectness, owing to the forgery of a debited check.

Id. — Examination of Returned Checks and Pass-book — Negligence of Depositor — Instruction — Error without Prejudice — Bank's Position Unchanged. — In an action by a depositor to recover the amount of a forged check paid by the bank and debited to his account, it is error for the court to charge the jury, in substance, that the depositor could not be charged with negligence in not examining his returned checks and bank-book when balanced after the payment within a reasonable time after he received them, and that the jury were only to consider whether he was guilty of unreasonable delay in giving notice to the bank after he made the examination and discovered the forgery; yet such error is not prejudicial where there is nothing in the evidence from which it could be reasonably inferred that the bank sustained any loss thereby, or that its position with reference to the check, or to the discovery of the forger, or to the adoption of coercive measures to retrieve its loss was in any manner changed to its disadvantage, because of not having earlier notice than was given of the forgery.

Id. — Basis of Estoppel — Conjecture — Evidence — Instruction. — Estoppels cannot be based upon mere conjecture, even if a proper foundation is laid for them in other respects; and to justify an instruction as to the estoppel of a depositor from denying his signature, there must be some evidence tending to show the facts upon which the estoppel is predicated.

Id. — Burden of Proof — Injury to Bank from Negligence of Depositor. — The burden of proof is upon the bank to show that it sustained damage or injury by the negligence of the depositor, and it must be shown by evidence having some reasonable tendency to establish the fact.

Instructions — Question of Fact — Submission to Jury — Sufficiency of Evidence — Surmise — Rational Inference. — In order to justify the submission of any question of fact to the jury, the proof must be sufficient to raise more than a mere conjecture or surmise that the fact is as alleged, and must be such that a rational, well-constructed mind can reasonably draw from it the conclusion that the fact exists; and when the evidence is not sufficient to justify such an inference, the court may properly refuse to submit the question to the jury.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*John B. Harmon, D. P. Belknap, Winans, Belknap & Godoy,* and *Jarboe, Harrison & Goodfellow,* for Appellant.

When the bank, at the request of the plaintiff, balanced his pass-book on September 4, 1878, and returned it to him with the checks paid, as vouchers, he was under an obligation to the bank, from the usages of business, to examine it or have it examined within a reasonable time, and give timely notice of his objections, if any, thereto; and if he failed to make, by himself or agent, such examination, and give such notice, and if the bank was not in fault, he was estopped from questioning the correctness of the account. (*Leather Manufacturers' Bank* v. *Morgan,* 117 U. S. 96, and cases cited; *Redington* v. *Woods,* 45 Cal. 426, 427; 13 Am. Rep. 190; *Weinstein* v. *Bank,* 69 Tex. 38; *First National Bank of Quincy* v. *Ricker,* 71 Ill. 439, 444; 22 Am. Rep. 104; *Frank* v. *Chemical Nat. Bank,* 84 N. Y. 209; 38 Am. Rep. 501; *Dana* v. *National Bank of the Republic,* 132 Mass. 156–158; *Hardy* v. *Chesapeake Bank,* 51 Md. 591; 34 Am. Rep. 325; *Bank of United States* v. *Georgia,* 10 Wheat. 333; 2 Morse on Banks and Banking, 3d ed., secs. 467, 472, 473, 489 e; 2 Parsons on Notes and Bills, 599, 600.) The estoppel named in the preceding proposition does not depend on whether the forger, at the time of committing the forgery or since, had or has, sufficient property to meet the demands of the bank. The right to seek and compel restoration and payment from him is in itself a valuable one, and it is sufficient if it appears that the bank, by reason of the negligence of plaintiff, was prevented from promptly, and it may be effectively, exercising that right. (*Leather Manufacturers' Bank* v. *Morgan,* 117 U. S. 96; *Continental Nat. Bank* v. *Nat. Bank of the Commonwealth,* 50 N. Y. 585, 590; *Knights* v. *Wiffin,* L. R. 5 Q. B. 660;

Morse on Banks and Banking, 3d ed., sec. 478; *U. S. Bank v. Bank of Georgia*, 10 Wheat. 344, 356; *Gloucester Bank v. Salem Bank*, 17 Mass. 33; *Redington v. Woods*, 45 Cal. 424, 425, 427, 428; 13 Am. Rep. 120.) Plaintiff was under obligation to the bank to exercise due dili- gence to give it information that the payment of the check was unauthorized; and this included not only diligence in giving notice after knowledge of the for- gery, but also due diligence in discovering it; and if by the exercise of due care and diligence he could have discovered the forgery soon after September 4, 1878, he failed in his duty, and the adoption of the check and ratification of its payment would be implied, and the jury should have been so instructed. (*Redington v. Woods*, 45 Cal. 424–427; 13 Am. Rep. 120, and cases cited above under first point; *Dana v. National Bank of the Republic*, 132 Mass. 156, 158.) Plaintiff did not return or offer to return the forged check to defendant, and therefore he was not entitled to recover. (*Redington v. Woods*, 45 Cal. 424–427; 13 Am. Rep. 120; *Thomas v. Todd*, 6 Hill, 341; *Gloucester Bank v. Salem Bank*, 17 Mass. 33; *Bank of U. S. v. Bank of Georgia*, 10 Wheat. 333.)

*W. H. L. Barnes*, and *H. L. Gear*, for Respondent.

A bank is bound to know the signature of its deposi- tor, and is guilty of negligence in failing to discover a forged signature; and if it pays a forged check out of the depositor's funds, without the authority or ratifica- tion of the depositor, it does so at its peril, and is liable to pay the amount thereof to the depositor upon demand, the same as if there had been no payment of the forged check, which must be treated as a nullity so far as the depositor is concerned. (*Weisser v. Denison*, 10 N. Y. 75, 77; 61 Am. Dec. 731; *Morgan v. State Bank*, 11 N. Y. 404; *Welsh v. German American Bank*, 73 N. Y. 426; 29 Am. Rep. 175; *Bank of British North America v. M. N. Bank*, 91 N. Y. 106, 111; *Frank v. Chemical Bank*, 84 N. Y. 213, 214; 38 Am. Rep. 501; *First Nat. Bank v. Whit- man*, 94 U. S. 347; *Thomson v. Bank of British N. A.*, 82

N. Y. 8; *Leavitt* v. *Stanton*, 1 Hill & D. Supp. 415; *Manufacturers' Bank* v. *Barnes*, 65 Ill. 69; 16 Am. Rep. 576; *Hardy* v. *Chesapeake Bank,* 51 Ind. 585; 34 Am. Rep. 325; *Mackintosh* v. *Eliot Nat. Bank,* 123 Mass. 395; *August* v. *First Nat. Bank,* 1 Hill & D. Supp. 139; *Georgia etc. R. & Bkg. Co.* v. *Love and Goodwill Soc.,* 85 Ga. 293; *Atlanta Nat. Bank* v. *Burke,* 81 Ga. 597.) The depositor may recover the amount of his deposits at any time within the period of limitation, after a demand therefor and refusal to pay. (*Thomson* v. *Bank of British North America,* 82 N. Y. 2.) The obligation of a bank is to pay its depositors the amount of their deposits upon demand, and a cause of action to recover the amount deposited accrues and limitation runs from the date of the demand and refusal to pay. (1 Morse on Banks and Banking, sec. 322; *Green* v. *Odd Fellows' Bank,* 65 Cal. 71; *Mitchell* v. *Beckman,* 64 Cal. 117; *Branch* v. *Dawson,* 33 Minn. 399; *Brahm* v. *Adkins,* 77 Ill. 263; *Bank* v. *Merchants' Nat. Bank,* 91 N. Y. 106; *McGough* v. *Jamison,* 107 Pa. St. 336; *Planters' Bank* v. *Farmers' and Merchants' Bank,* 8 Gill & J. 449.) That negligence *per se* is imputable to a bank which pays a check with a forged signature without previous fault of its depositor inducing the payment, and that it can have no relief either against such depositor or against a *bona fide* holder to whom it has paid the money, is established by all the authorities. In addition to those before cited, see *Price* v. *Neale,* 3 Burr. 1355; *Smith* v. *Mercer,* 6 Taunt. 76; *Laborde* v. *Consolidated Assoc.,* 4 Rob. (La.) 190; 39 Am. Dec. 517, and note; *Goddard* v. *Merchants' Bank,* 4 N. Y. 147; *Bank of Commerce* v. *Union Bank,* 3 N. Y. 230; *National Park Bank* v. *Ninth National Bank,* 46 N. Y. 81; 7 Am. Rep. 310, and cases cited; *Salt Springs Bank* v. *Syracuse Savings Inst.,* 62 Barb. 101; *First Nat. Bank of Quincy* v. *Ricker,* 71 Ill. 439; 22 Am. Rep. 104; *Bernheimer* v. *Marshall,* 2 Minn. 78; 72 Am. Dec. 79; *National Bank* v. *Grocers' Bank,* 35 How. Pr. 412; *People's Bank* v. *Franklin Bank,* 88 Tenn. 299; 17 Am. St. Rep. 884; *Georgia etc. R. & Banking Co.* v. *Love and Goodwill Soc.,* 85 Ga. 293; *Danvers*

*First National Bank* v. *Salem National Bank*, 24 N. E. Rep. 44.) Although it is true that where prior negligence of the drawer or holder has induced the loss, the party guilty of the first negligence must bear the loss (*Bernheimer* v. *Marshall*, 2 Minn. 78; 72 Am. Dec. 79; *Gloucester Bank* v. *Salem Bank*, 17 Mass. 41; *People's Bank* v. *Franklin Bank*, 88 Tenn. 299; 17 Am. St. Rep. 884; *Deposit Bank* v. *Fayette Nat. Bank*, 7 L. R. A. 849; *Young* v. *Grote*, 4 Bing, 253; *Orleans First Nat. Bank* v. *State Bank*, 22 Neb. 769; 3 Am. St. Rep. 294; *First Nat. Bank of Quincy* v. *Ricker*, 71 Ill. 439; 22 Am. Rep. 104; *National Bank of North America* v. *Bangs*, 106 Mass. 441; 8 Am. Rep. 349), yet there is no pretense in this case of any prior negligence of the plaintiff, or that his negligence induced the payment of the check. The negligence occasioning the loss was wholly that of the bank. There is a clear distinction between the case of a skillfully altered check and one whose signature is forged, as a bank, although bound to know its depositor's signature, is not bound to know the handwriting of the body of the check. (*Redington* v. *Woods*, 45 Cal. 419; 13 Am. Rep. 120; *Bank of Commerce* v. *Union Bank*, 3 N. Y. 234.) There can be no estoppel upon the plaintiff from asserting the forgery of the check, growing out of his failure immediately to discover and notify the defendant of the forgery when the check was returned to him September 11, 1878, as the bank was not induced to pay the check by any prior act or neglect of the plaintiff. (*Weisser* v. *Denison*, 10 N. Y. 68; 61 Am. Dec. 731; *Welsh* v. *German American Bank*, 73 N. Y. 428; 29 Am. Rep. 175; *Frank* v. *Chemical Bank*, 84 N. Y. 213, 214; 38 Am. Rep. 501; approved in 117 U. S. 117, 118; *Bank of British North America* v. *Mer. Nat. Bank*, 91 N. Y. 111; *August* v. *First Nat. Bank* 1 Hill & D. Supp. 141; *National Bank* v. *Tappan*, 6 Kan. 465; 7 Am. Rep. 568; *Manufacturers' National Bank* v. *Barnes*, 65 Ill. 71; 16 Am. Rep. 576; *Hardy* v. *Chesapeake Bank*, 51 Md. 587, 588; 34 Am. Rep. 325; Morse on Banks and Banking, 3d ed., sec. 468.) He who invokes an estoppel *in pais* must be able to show

some act or omission by which he was misled to his injury. (Bigelow on Estoppel, 549, 561, and cases cited; *Barstow v. Savage Mining Company*, 64 Cal. 388; 49 Am. Rep. 705; *Martin v. Zellerbach*, 38 Cal. 300; 99 Am. Dec. 365; *Bowman v. Cudworth*, 31 Cal. 149.) The plaintiff's failure to return the forged check was no bar to his recovery. Where the possession of a forged check or draft by a bank is not necessary to its right of action in a recovery over from a third party, there is no obligation on the part of the plaintiff to surrender or tender it to the defendant. (*United States v. National Park Bank*, 6 Fed. Rep. 855.) The payment of a forged check by the bank on which it is drawn gives no right of action on the paper itself, against any party to it. (*United States v. Bank*, 2 Mackey, 289.) It is a complete answer to the criticism of appellant upon the instructions given in regard to pecuniary loss of the bank, that there was an entire absence of any evidence to sustain the bank's plea of estoppel. Where an estoppel *in pais* is relied upon as a defense, all the facts essential to constitute it must be affirmatively pleaded and proved by the defendant. (*Clarke v. Huber*, 25 Cal. 593; *Davis v. Davis*, 26 Cal. 23, 39; *Burlington etc. R. R. Co. v. Harris*, 8 Neb. 140; *Leland v. Irenbeck*, 1 Idaho, 469; *Hanson v. Chiatovich*, 13 Nev. 395; *Merrill v. Tobin*, 30 Fed. Rep. 738; *Page v. Smith*, 13 Or. 410; *Rugh v. Ottenheimer*, 6 Or. 231; 25 Am. Rep. 513; *Wood v. Ostram*, 29 Ind. 177; *Anderson v. Hubble*, 93 Ind. 578; 47 Am. Rep. 394; *Baals v. Stewart*, 109 Ind. 371; *Buck v. Milford*, 90 Ind. 291; *Stewart v. Beck*, 90 Ind. 458; *Bray v. Marshall*, 75 Mo. 329; *Miller v. Anderson*, 19 Mo. App. 71; *Noble v. Blount*, 77 Mo. 235; *Warder v. Baldwin*, 51 Wis. 450; *Burlington Ind. District v. Merchants' Bank*, 68 Iowa, 343; *Weinstein v. Bank*, 69 Tex. 38.) It is directly held in *Weinstein v. Bank*, 69 Tex. 38, that a plea of estoppel in favor of a bank paying forged checks must aver that the bank suffered injury as matter of fact by reason of the plaintiff's negligence. Of course, what the bank must affirmatively allege it must affirmatively prove. A per-

son pleading an estoppel must show affirmatively that he so acted as to be injured if the estoppel were not effectual. (*Jamison* v. *Miller*, 64 Iowa, 404.) To sustain a plea of estoppel, evidence in support of the facts claimed to give rise to the estoppel must be adduced by the party pleading it, for upon him is the burden of proof in relation to those facts. (*Merrill* v. *Tobin*, 30 Fed. Rep. 738; *Merrill* v. *Shea*, 30 Fed. Rep. 743.) As the defendant has introduced no evidence tending to prove the existence of the estoppel alleged in its answer, or of any estoppel whatever, he is not prejudiced by the instructions given in regard to the estoppel, and the judgment should be affirmed, as there can be no reversal for an abstract instruction, however erroneous it may be, if the cause of action or matter of defense to which it may apply is not sustained by any sufficient evidence. (*Enright* v. *S. F. and S. J. R. R. Co.*, 33 Cal. 236; *Hebrard* v. *Jefferson G. and S. M. Co.*, 33 Cal. 290; *Robinson* v. *W. P. R. R. Co.*, 48 Cal. 410–425; *People* v. *O'Neal*, 67 Cal. 378; *People* v. *Cochran*, 61 Cal. 551; *People* v. *Smith*, 59 Cal. 604; *People* v. *Ah Kong*, 49 Cal. 6; *Satterlee* v. *Bliss*, 36 Cal. 491, 519.)

DE HAVEN, J. — The plaintiff was a depositor in the bank of defendant, and the controversy in this action grows out of the payment by defendant of a check for sixteen thousand seven hundred dollars, purporting to have been signed by plaintiff, and for which amount defendant claims that it is entitled to debit the account of plaintiff. The complaint alleges that this check was a forgery. This is denied in the answer, and as another and separate defense, it is averred, in substance, that the plaintiff is estopped to deny the genuineness of said check because of his negligence in not examining his balanced pass-book and returned checks, including the one in dispute, within a reasonable time, and giving notice that such check was forged, "by reason of which laches defendant was prevented from tracing out the forger of said check or said signature, if it was a forgery,

and proceeding against him, for a period of nearly five months, and until all trace of said forger was lost." The defendant also avers that the account between itself and plaintiff had become a stated one.

The check was paid on May 29, 1878, and on September 4, 1878, the defendant returned to plaintiff his pass-book, showing the statement of his account at that date, and that he was charged with the amount of this check, which was also returned to him as one of the vouchers. On December 11, 1878, another statement of plaintiff's account was rendered by defendant, in which appeared the balance shown by the previous account. The evidence also tended to show that plaintiff did not at once examine the check in dispute when it was returned to him with his balanced pass-book on September 4, 1878, nor until some time in the month of December, 1878, and that he first intimated to defendant a doubt of its genuineness about December 28, 1878, but did not give notice that he actually claimed it to be a forgery until February 1, 1879.

The verdict of the jury in favor of plaintiff must be deemed, on this appeal, to have conclusively established the fact that the check was a forgery, as there was evidence sufficient to establish such a finding, and it is not claimed that there was any error in the instructions of the court, so far as they relate to that particular point.

It is well settled that a bank, in receiving ordinary deposits, becomes the debtor of the depositor, and its implied contract with him is to discharge this indebtedness by honoring such checks as he may draw upon it, and it is not entitled to debit his account with any payments except such as are made by his order or direction. (Crawford v. West Side Bank, 100 N. Y. 50; Phœnix Bank v. Risley, 111 U. S. 125.) All unauthorized payments, such as upon forged checks, are therefore made at the peril of the bank, and it is not justified in charging them against the depositor's account, unless some negligent act of his in some way contributed to induce such payment in the first instance, or unless by his subsequent

conduct in relation to the matter he is upon equitable principles estopped to deny the correctness of such payments. This view of the law cannot be well questioned, and finds abundant support in the decisions of courts. (*Shipman* v. *Bank of State of New York*, 126 N. Y. 318; *Hardy* v. *Chesapeake Bank*, 51 Md. 562; 34 Am. Rep. 325; *Weinstein* v. *Bank*, 69 Tex. 38; *Leather Manufacturers' Bank* v. *Morgan*, 117 U. S. 96.)

It is not claimed in this case that plaintiff was guilty of any prior negligence which induced the defendant to pay the check in dispute, and we are therefore to consider only the one general question, whether, upon the evidence before it, the court committed any error to the prejudice of the defendant in giving or refusing instructions relating to the defense of estoppel, and this we proceed to do.

The plaintiff was in no manner responsible for the action of the defendant in paying the check. In making such payment it parted with its own money, and not that of plaintiff, and the loss consequent thereon was its own, and should not be transferred to the plaintiff, unless, from all the circumstances in the case, it appears reasonably probable that but for his alleged negligence the defendant could have protected itself. The defendant has not in fact discharged its indebtedness to plaintiff, and should not be permitted to debit him with any amount as an offset thereto, unless it appears that by reason of the negligent conduct of plaintiff, it has omitted to take proceedings which it otherwise would and could have taken to indemnify itself from loss. This seems to us clear upon the plainest principles of justice. The balancing of the pass-book in September, and charging the plaintiff therein with the amount of this check, and its return to him at the same time, constituted a statement of the account between himself and the defendant, and it thereupon became the duty of the plaintiff to examine the same within a reasonable time, and give to defendant, without unreasonable delay, notice of any objection which he had to it; and unless such objection was made

within a reasonable time it became an account stated, and there was imposed upon the plaintiff the burden of showing that the check with which he was debited was a forgery; and in addition to this, if the circumstances attending the entire transaction were such as to make it reasonably probable that the bank had suffered prejudice by plaintiff's unreasonable acquiescence in the account as stated, he would not be permitted to open the account by proof of its incorrectness.

Upon the trial, the court instructed the jury, in substance, that if they found that the check in dispute was a forged one, they must find for the plaintiff, unless it was shown that plaintiff's failure to examine his checks deprived the defendant of an opportunity to save itself from loss on account of the money paid thereon; and they were further instructed, that if "the plaintiff was guilty of negligence in respect to his treatment of his checks, including the disputed check, after he received them at the September balancing and the December balancing, or by reason of his making the discovery of the forgery, or of the facts which put him on inquiry respecting it, some months before he gave any notice to the bank of such discovery, whereby the bank was or may have been injured, they may find for the defendant." So far, this was a correct statement of the law, and, with other instructions given, conveyed to the jury with sufficient clearness the law as we have declared it. But the court also gave the following: "In considering the fact that Mr. Janin's bank-book was balanced, and that the bank's statement of the balance was apparently acquiesced in for a considerable length of time, I instruct you that the plaintiff was under no contract to the bank to examine with diligence his returned checks and bank-book. In contemplation of law, the book was balanced and the checks returned for the protection of the depositor, not for the protection of the bank; and when Mr. Janin failed to examine it, the only consequence was, that the burden of proof was shifted. Mr. Janin then became bound to show that the account was wrongly

stated. This right he has preserved so long as the claim was not barred by the statute of limitations." This instruction, although apparently supported by the authority of *Weisser* v. *Denison,* 10 N. Y. 68, 61 Am. Dec. 731, is not, in our opinion, entirely correct, and is in conflict with the other instructions referred to. When considered in connection with a portion of another instruction given, to the effect that it "was sufficient to give notice when the forgery was discovered," this instruction clearly implied that plaintiff could not be charged with negligence in not examining his checks within a reasonable time, and that the jury were only to inquire whether he was guilty of unreasonable delay in giving notice after he made the examination and discovered the forgery. This is not the true rule; but the error found in this instruction will not, in view of the undisputed evidence, justify a reversal of the judgment. Conceding that the plaintiff was guilty of negligence in not earlier examining his checks, discovering the forgery, and giving notice thereof, there is nothing in the evidence from which it can be reasonably inferred that the defendant sustained any loss thereby, or that its position with reference to the check, because of not having earlier notice, was in any manner changed to its disadvantage, and the court would have been justified in so charging the jury. The check was paid on May 29, 1878, and it was not until September 4, 1878, that it was returned to plaintiff. The check was payable to " currency or bearer," and when paid, the person who presented it was not identified or required to indorse it. This case was tried in 1885, and there is nothing in the evidence pointing to the fact that if notice had been given on the very day the check was returned, the defendant would have been in any better position to discover the forger, or the person who uttered it, or to avail itself of any of the coercive measures known to the law, by which to retrieve its loss, than it was at the time it received notice. If plaintiff was negligent, it was not shown that the defendant suffered any damage there-

by, for that reason such negligence cannot be allowed as a defense to plaintiff's right to recover in this action.

There may be some general language in the case of *Leather Manufacturers' Bank* v. *Morgan*, 117 U. S. 115, which would seem to imply that it is not necessary that the evidence should tend to show that any pecuniary benefit would have accrued to the defendant if reasonable notice had been given it, but this general language is limited by the facts of that case, and the more specific rule, which the court announced, viz.: "Still further, if the depositor was guilty of negligence in not discovering and giving notice of the fraud of his clerk, then the bank was thereby prejudiced, because it was thereby prevented from taking steps, by the arrest of the criminal, or by an attachment of his property, or other form of proceeding, to compel restitution."

In the case of *Continental National Bank* v. *Bank of Commonwealth*, 50 N. Y. 576, cited by appellant, it is said that the arrest and detention of a swindler are powerful means of coercing restoration of property, and that the loss of this means in relying upon the declaration of another would estop such person from denying the truth of the statement upon which reliance was made. But this language is to be considered in connection with the particular facts then before the court, and as pointed out in the subsequent case of *White* v. *Continental National Bank*, 64 N. Y. 322, 21 Am. Rep. 612. The declaration held to be an estoppel in that case was the direct admission of the genuineness of the check afterwards claimed to be forged, and that "had the teller of the certifying bank disclaimed the forged certificate and pronounced it a forgery when presented, the holder of the check would have had ample time to arrest the swindler at the Bank of the State of New York, before he had received the money on the gold checks, and before he went to the subtreasury with his gold certificates."

The distinction between such a case as that and one like this, in which there is nothing in the evidence to indicate that all trace of the forger was not lost before

the check in controversy was returned to plaintiff months after its payment, is a marked one, and in *White* v. *Continental National Bank*, 64 N. Y. 322, 21 Am. Rep. 612, just cited, what we conceive to be the rule, applicable to the facts in this record, is thus stated: " In the case at bar, it is the merest conjecture, with scarcely a possibility to support it, that the defendant, or those from whom it received the bill, could, at any time after the transmission of the foreign bill of exchange to Baltimore, have taken any effectual measures either for arresting the swindler or reclaiming the bill bought and paid for upon the credit of the bill. Estoppels cannot be based upon mere conjectures, even if a proper foundation is laid for them in other respects."

There is nothing in *Casco Bank* v. *Keene*, 53 Me. 103, in conflict with this. In that case, and upon its peculiar facts, it was held proper to instruct the jury, " that if the plaintiffs, relying on the defendant's admission, were induced to refrain from obtaining security from Judson by his arrest or by an attachment of his property, and they thereby sustained an injury, then the defendant would be estopped from denying his signature." But of course to justify such an instruction, there must be some evidence tending to show the facts upon which it is predicated.

In this case the burden of proof to show that it sustained damage or injury by the negligence of plaintiff was upon the defendant, and this it was required to show by evidence having some reasonable tendency to establish such fact. In order to justify the submission of any question of fact to a jury, the proof must be sufficient to raise more than a mere conjecture or surmise that the fact is as alleged. It must be such that a rational, well-constructed mind can reasonably draw from it the conclusion that the fact exists, and when the evidence is not sufficient to justify such an inference, the court may properly refuse to submit the question to the jury; and in our opinion, the evidence in this case was not such as would have warranted the jury in find-

ing as a fact that the delay of plaintiff in giving it notice that the check in question was a forgery lost to it any rights or remedies which otherwise it might have resorted to in order to save itself from the loss incurred by its own mistake or negligence in the first instance, and which it now asks the plaintiff to bear, and therefore the error we have pointed out in the instruction of the court was without prejudice to the defendant.

Judgment and order affirmed.

SHARPSTEIN, J., GAROUTTE, J., BEATTY, C. J., and McFARLAND, J., concurred.

Mr. Justice Harrison, being disqualified, did not participate in the foregoing opinion.

PATERSON, J., dissenting. — I concur in the views of Mr. Justice De Haven on the main questions of law discussed in the opinion, but think that the question whether the defendant sustained any loss by reason of the plaintiff's failure to notify the defendant earlier of the discovery of the forgery should have been left to the jury. The evidence shows that the plaintiff had notice of the forgery several months prior to the time when he informed the officers of the bank of the fact, and when asked why he had not before spoken of the matter, he replied that he had been working up the case himself. It seems to me that, whatever may be said of the duty of a depositor to examine his checks promptly, it must be conceded that when he has discovered the fact that his signature has been forged, or is informed of circumstances which would put him upon inquiry as to the fact, it is his duty to report the matter immediately to the officers of the bank. If he has *willfully* withheld from the bank any information he may have had, he ought to be estopped from claiming that the bank could not have protected itself. Under the decision of the majority, it seems to me a dishonest depositor will be enabled, without peril to himself, to perpetrate a fraud upon the bank. If he discover that he has been negli-

gent in examining his checks, he will, nevertheless, be entitled to recover, unless the bank can show that it was prejudiced by his negligence.  Now, he will know that the longer he withholds notice of the forgery from the bank, the more difficult it will be for the bank to prove that it could have detected and arrested the forger, and therefore the easier it will be for him to recover.  This, it seems to me, is putting a premium upon laches, and encouraging a dishonest depositor even to assist the forger in covering up his tracks.

There is no doubt in my mind that Mr. Janin acted in the utmost good faith, but it is a question of fact which should be left to the jury, whether his long delay in giving the bank notice of the forgery did or did not prejudice the bank.  The latter was entitled to immediate notice of plaintiff's discovery, and it does not follow that because plaintiff failed to detect the forger, the officers of the bank also would have failed to do so.  The arrest and detention of a forger is often a strong and effectual means for the restoration of the money, and although it may be a difficult question to determine in certain cases whether the injured party has been deprived of or delayed in the exercise of this coercive power by the negligence of the depositor, it is for the jury, reasoning to practical results from all the circumstances, to say whether it is fairly probable that the defendant could and would have taken effective measures to protect itself.  ( *C. N. Bank* v. *N. Bank*, 50 N. Y. 575; *Voorhis* v. *Olmstead*, 66 N. Y. 113.)  In *Leather Manufacturers' Bank* v. *Morgan*, 117 U. S. 115, the court said: "If the depositor was guilty of negligence in not discovering and giving notice of the fraud of his clerk, then the bank was thereby prejudiced, because it was prevented from taking steps, by the arrest of the criminal, or by an attachment of his property, or other form of proceeding, to compel restitution.  It is not necessary that it should be made to appear, by evidence, that benefit would certainly have accrued to the bank from an attempt to secure payment from the criminal.

Whether the depositor is to be held as having ratified what his clerk did, or to have adopted the checks paid by the bank and charged to him, cannot be made, in this action, to depend upon a calculation whether the criminal had, at the time the forgeries were committed or subsequently, property sufficient to meet the demands of the bank. An inquiry as to the damages in money, actually sustained by the bank by reason of the neglect of the depositor to give notice of the forgeries, might be proper, if this were an action by it to recover damages for a violation of his duty. But it is a suit by the depositor, in effect to falsify a stated account, to the injury of the bank, whose defense is, that the depositor has, by his conduct, ratified or adopted the payment of the altered checks, and thereby induced it to forbear taking steps for its protection against the person committing the forgeries. As the right to seek and compel restoration and payment from the person committing the forgeries was in itself a valuable one, it is sufficient if it appears that the bank, by reason of the negligence of the depositor, was prevented from promptly, and it may be effectively, exercising it. . . . . It seems to us that if the case had been submitted to the jury, and they had found such negligence upon the part of the depositor as precluded him from disputing the correctness of the account rendered by the bank, the verdict could not have been set aside as wholly unsupported by the evidence. In their relations with depositors, banks are held, as they ought to be, to rigid responsibility. But the principles governing those relations ought not to be so extended as to invite or encourage such negligence by depositors, in the examination of their bank accounts, as is inconsistent with the relations of the parties or with those established rules and usages sanctioned by business men of ordinary prudence and sagacity, which are or ought to be known to depositors." (See also *Hardy* v. *Chesapeake Bank,* 51 Md. 562; 34 Am. Rep. 325; *Casco Bank* v. *Keene,* 53 Me. 103.)

It is true that was the case of an altered check, and

this is a case of forged signature, but the principles announced by Mr. Justice Harlan are as applicable on the question before us to one case as to the other. A banker is not bound to know the handwriting of the body of the check, but is bound to know the depositor's signature. He is not bound to detect a skillful alteration, which can only be known to the drawer of the check, and the latter is, therefore, bound to detect the alteration at the earliest opportunity, and inform the bank thereof. In these and many other respects the principles applicable to the two cases are different; but when it appears that the plaintiff's negligence contributed to the injury, the question whether the bank was prejudiced by the failure of the plaintiff to exercise ordinary care is as material in one case as in the other, and must be determined by the same rules.

I do not claim, as intimated in the opinion above quoted, that the law would presume the bank was prejudiced by the long delay and negligence of the depositor in failing to detect and report the forgery. That is a question, I think, which should be left to the jury. (*Dana* v. *National Bank,* 132 Mass. 156.) It is claimed by respondent that there is no evidence tending to show that the bank was prevented from tracing and discovering the forger, or from exercising its right to recover the money, through reliance on plaintiff's implied admission of the correctness of the account rendered. On the other hand, it is claimed by appellant to be clearly shown by the evidence that the bank was misled to its prejudice through such negligence. The fact that the bank did not require the signature of the stranger to whom the money was paid, that it took no evidence as to his identity, and made no effort to detect the forgery at any time, but constantly insisted that the check was genuine, although possessed of evidence tending to show that Hooper was the forger, are matters for the consideration of the jury. So, also, the fact that the plaintiff allowed long periods of time to elapse between the occasions when he presented his bank-book to be balanced, and that he frequently asked

the teller of the bank for his balance instead of consulting his bank-book, that he neglected to examine the book with the return checks for several months after September 4, 1878, that he had expressed surprise at the smallness of the balance as shown by the books of the bank, and his failure to notify the bank until February, 1879, eight months after he began to doubt the genuineness of the check, are all matters to be considered by the jury in determining the questions at issue. The court cannot say, it seems to me, that as a matter of law under such circumstances the plaintiff is entitled to recover. I am unable to see any force in the suggestion that the officers of the bank took no steps at the time the check was paid to identify the person who presented it. Unless the paying teller has a suspicion as to the genuineness of the signature of a check payable to bearer, he is not called upon to make and preserve evidence as to such identity, and if such precautions had been taken in this case, that fact would have been conclusive evidence that the bank had notice of facts which put it upon inquiry. In such a case, of course the bank would have no defense, even if the depositor was guilty of negligence.

It is said that there is no evidence from which it can be reasonably inferred that the plaintiff's delay prejudiced the defendant. But the inability of the defendant to produce such evidence may have been caused by the lapse of time between the time when plaintiff, acting as a prudent man, ought to have discovered and given notice of the forgery, and the time when such notice was in fact given. This is peculiarly a question for the jury, under proper instructions from the court.