[Civ. No. 306.    Third Appellate District.—April 24, 1907.]

## ARCHIBALD ESTATE, a Corporation, Appellant, v. A. H. MATTESON, Respondent.

ACTION FOR MONEY LOANED—EVIDENCE—ERROR IN NONSUIT.—In an action for money loaned by a corporation, where the plaintiff's evidence showed that the corporation had authorized its president officially, as such, to draw checks for the moneys; that he had no money in bank to his own credit; that the checks of the corporation were signed by him officially in favor of the defendant for the amount of the alleged loan, and were cashed by defendant and returned to the secretary, after the president's death; that defendant had admitted receiving the money; that it had not been repaid; and that the deceased president had stated to the secretary that the money had been loaned to the defendant—the court erred in granting a nonsuit.

ID.—EFFECT OF MOTION FOR NONSUIT—DEMURRER TO EVIDENCE—QUESTION OF LAW—INFERENCES OF FACT.—A motion for a nonsuit cannot be granted where plaintiff's evidence tends to establish the material averments of the complaint. The motion operates practically as a demurrer to plaintiff's evidence, and assumes the truth of the facts proved and of all reasonable presumptions and inferences of fact therefrom, and presents a pure question of law for the court.

ID.—INCOMPETENT EVIDENCE—HEARSAY—CROSS-EXAMINATION.—Where hearsay evidence which had been excluded in chief was brought out by the defendant on cross-examination of the secretary, as to declarations made by the deceased president, effect must be given to it on the motion for nonsuit. Error in admitting evidence for the plaintiff cannot be reviewed on motion for a nonsuit.

ID.—INAPPROPRIATE FINDINGS ON MOTION—CREDIBILITY OF WITNESSES—PROBATIVE POWER.—It was inappropriate for the court to make findings of fact on the motion for a nonsuit. The question of the credibility of witnesses cannot arise upon such motion except to give to the testimony for plaintiff its full probative power.

ID.—TRIAL BY COURT—IMMATERIAL DISTINCTION AS TO NONSUIT.—There is no difference in the power and duty of the court, when sitting as a jury, and when trying a case by jury, as regards the decision of a motion for nonsuit, the rules for the decision of which are the same in either case. The only question to be decided is whether plaintiff's evidence has made a prima facie case.

APPEAL from a judgment of the Superior Court of Madera County.    W. M. Conley, Judge.

The facts are stated in the opinion of the court.

R. L. Hargrove, for Appellant.

Raleigh E. Rhodes, for Respondent.

HART, J.—The plaintiff corporation brought this action to obtain judgment from the defendant for the sum of $1,050, alleged to have been loaned by the former to the latter.    When plaintiff rested its case, the court, upon the application of defendant, granted a nonsuit, and it is from this judgment of nonsuit, upon a bill of exceptions, that this appeal is taken.

This cause has previously been before this court on an appeal from a judgment of nonsuit, and the judgment reversed. (*Archibald Estate* v. *Matteson* (Cal.), 84 Pac. 840.)    The reversal was based upon the proposition, according to the opinion filed in the case, that there was evidence disclosed by the record tending to establish the material averments of the complaint, and that, therefore, the court erred in ordering a.nonsuit.

The learned judge of the court below, in granting a nonsuit in the case now before us, filed findings of fact and conclusions of law.    He also filed a written opinion (which is incorporated in the opening brief of counsel for appellant) setting forth the reasons upon which he reached his conclusion upon the motion for a nonsuit.

There was but one witness, W. J. Archibald, secretary of corporation plaintiff, produced upon behalf of plaintiff, and his testimony, together with certain documentary evidence, introduced into the record all the facts upon which plaintiff seemed to have relied and from the character of which the court felt justified in making its ruling, resulting in the granting of the nonsuit.

From the evidence thus adduced we learn that the Archibald Estate was organized as a corporation on the eleventh day of May, 1904; that on the fourth day of June, 1904, there was held by the directors of the corporation a meeting, at which, with the transaction of other business, J. F. Archibald was elected president of the corporation or of the said board of directors thereof, and W. J. Archibald, the witness (and a nephew of J. F. Archibald), was made secretary; that on June 4, 1904, J. F. Archibald, the president, etc., executed a

deed transferring to said corporation all the real and personal property of which he was seised and possessed, and that on July 5, 1904, he turned over to the corporation by check all the money he had on deposit in the Commercial Bank of Madera, amounting to the sum of $3,082.55. This check and the deed conveying the real and personal property to the corporation were offered and received in evidence. On the fourth day of June, 1904, the board of directors of said corporation passed and adopted the following resolution, which was admitted in evidence as a part of the minutes of the proceedings of the board of that day: "Resolved, that the President of this corporation be and he is authorized, empowered and directed to draw from any bank or person or corporation in which may be deposited any of the money or funds of this corporation, upon his own signature and request, and the signature of the Secretary shall not be necessary to draw said money or funds."

The sum claimed to have been loaned by plaintiff to defendant was received by the latter in two different amounts or installments in the form of checks. These checks were received in evidence and were as follows:

"Madera, Cal., September 1, 1904.
"Commercial Bank of Madera. Pay to the order of A. H. Matteson the amount Eight Hundred dollars.
"$800.00          (Signed)   J. F. ARCHIBALD, Pres."
(Indorsed)   (Signed)   "A. H. MATTESON."

(Across the face is stamped)   "Paid, 9—2—04."

"No.           Madera, Cal., October 22nd, 1904.
"Commercial Bank of Madera. Pay to the order of A. H. Matteson amount two hundred fifty dollars.
"$250.00       (Signed)     J. F. ARCHIBALD, Pres."
(Indorsed)   (Signed)   "A. H. MATTESON."

(Across the face is stamped)   "Paid, 10—2—04."

The evidence shows that J. F. Archibald died on the thirteenth day of November, 1904. The witness W. J. Archibald stated that said checks were drawn on the funds of the corporation. The passbook of the Archibald Estate issued by the Commercial Bank of Madera, showing that the corporation had sufficient money on deposit in that institution to cash said checks, was admitted in evidence. Witness Archi-

bald testified that the bank in which the money of plaintiff was deposited was instructed to pay money on checks issued by J. F. Archibald and signed by him as president, in accordance with the resolution to that effect adopted by the board of directors on the fourth day of June, 1904. He further testified that the deceased, J. F. Archibald, had no money in his individual name on deposit in said bank; that he had held conversations with deceased prior to his death, in which the latter had declared that he had loaned the money to the defendant; that on the twenty-first day of November, 1904, the board of directors of the plaintiff held a meeting at which a resolution was adopted directing that a demand be made upon the defendant for the payment to the corporation of the sum of money in dispute; that previous to the institution of this suit, he held a conversation with the defendant, who then admitted having received the money on the checks heretofore referred to; that there was no written evidence either by note or mortgage or other written contract, of the alleged transaction between the plaintiff and defendant; that during the lifetime of the deceased and after the organization of the corporation all, moneys withdrawn from the Commercial Bank of Madera by the corporation were so drawn by checks signed "J. F. Archibald, Pres." On cross-examination this witness admitted that there was no record either in the minutes of the proceedings of the corporation or in any other book kept by it for the purpose of preserving the history of its business dealings, of the alleged transaction between plaintiff and defendant. He admitted that J. F. Archibald paid personal bills and accounts against himself through checks upon the Commercial Bank signed by him as "Pres." He further admitted that he knew nothing of the transaction to which this controversy relates, except such knowledge with reference thereto as he had obtained from an inspection of the checks after they had been cashed and turned over to plaintiff by the bank, and such information as he had gathered from the deceased in conversations with him upon the subject before his death and that learned from the defendant himself in a conversation a short time preceding the commencement of this action. In other words, the witness admitted having no personal knowledge of the transaction.

The facts thus detailed are substantially all that were presented by plaintiff and upon which it rested its case.

The complaint is in the ordinary and usual form in actions for money had and received, and is verified.  The answer denies the averments of the complaint and sets up a special defense to the effect that said cause of action "is barred by the provisions of section 1973 of the Code of Civil Procedure," and "particularly subdivision 1 of said section," and by way of a plea in abatement alleges, that if the defendant is indebted to plaintiff in the sum sued for or in any other sum, the action is prematurely brought, for the reason that cause therefor has not accrued to plaintiff, etc.  But it does not appear definitely from the answer how or why the action is barred or was prematurely commenced, nor does the evidence furnish any light upon the subject.  The only question, therefore, demanding inquiry and discussion is whether or not, from the standpoint of the evidence, received upon the merits of the transaction, the court erred in its order granting the nonsuit.  We know of no rule of law more firmly rooted in the procedure of our system of jurisprudence than that which forecloses a court from ordering a nonsuit upon the close of plaintiff's case where the evidence presented by the plaintiff *tends* to establish the material averments of the complaint.  A motion for a nonsuit in purpose and effect practically operates as a demurrer to the evidence, and must therefore assume that all the facts given in evidence to support the material allegations of the complaint speak the truth.  The consequence of the rule as thus stated is that a motion for a nonsuit presents for the decision of the court a pure question of law.  (*Cravens* v. *Dewey,* 13 Cal. 41; *Donahue* v. *Gallavan,* 43 Cal. 576; *Schroeder* v. *Schmidt,* 74 Cal. 460, [16 Pac. 243]; *Warner* v. *Darrow,* 91 Cal. 311, [27 Pac. 737]; *Goldstone* v. *Merchants' etc. Co.,* 123 Cal. 631, [56 Pac. 776]; *Wright* v. *Roseberry,* 81 Cal. 87, [22 Pac. 336].)

The sole question, therefore, is: Does the evidence tend to prove the material averments of the complaint?  If it does, then the judgment of nonsuit cannot stand.  The evidence must, of course, establish a *prima facie* case.  The proof must be sufficient to raise more than a mere conjecture or surmise that the fact is as alleged.  (*Janin* v. *London etc. Bank,* 92 Cal. 14, [27 Am. St. Rep. 82, 27 Pac. 1100].)  But where the

evidence and the presumptions reasonably arising therefrom are legally sufficient to prove the material allegations of the complaint, a nonsuit should be denied. (*Felton* v. *Millard*, 81 Cal. 540, [21 Pac. 533].) Or, even where there is a conflict in the evidence, and some evidence tends to sustain the plaintiff's case, a motion for a nonsuit should not be allowed. (*Pacific Mut. L. I. Co.* v. *Fisher*, 109 Cal. 567, [42 Pac. 154]; *Wassermann* v. *Sloss*, 117 Cal. 425, [59 Am. St. Rep. 209, 49 Pac. 566].) The record here shows that certain testimony given by the witness Archibald was purely secondary or hearsay, and should have been excluded, and it may be stated that where objection was interposed against such evidence the court promptly and properly sustained the objection. But most of the objectionable testimony referred to was brought out by the defendant himself upon the cross-examination of Archibald. But it is nevertheless argued by counsel for respondent that such testimony is not competent in any view of the proposition to be considered in the determination of the question of whether or not a nonsuit should have been granted. If it were within the province of this court upon an appeal from a judgment of nonsuit to review errors involved in admitting incompetent testimony, the respondent would hardly find himself in a position to complain. A party cannot take advantage of his own fault or wrong. This is, however, a proposition which cannot enter into the consideration of the question of whether a nonsuit should or should not have been granted, for even if evidence be erroneously admitted against objection, but tends to prove the averments of the complaint, full effect must be given to it upon motion for a nonsuit. (*Wright* v. *Roseberry, supra.*) The rule, in other words, is that where, upon a motion for a nonsuit, the testimony is relevant but may be inadmissible under some rule of evidence, and is admitted either without or against objection, it must be given the effect of its full probative force. "Error in admitting evidence for the plaintiff cannot be reviewed on a motion for a nonsuit." (*O'Connor* v. *Hopper*, 102 Cal. 528, [36 Pac. 939].) And in the consideration of a motion for a nonsuit it is the duty of the court to view the testimony in the strongest and most favorable light for the plaintiff.

Do the facts as developed by the evidence, and of which we have presented an epitome, sufficiently meet the criterion established by the rules thus declared, or, in other words, do they make out a *prima facie* case for plaintiff?

A résumé of the record as briefly given here will show that there is proof that all the property, real and personal, including the money he had on deposit in the Commercial Bank, was transferred by J. F. Archibald to the Archibald Estate corporation; that the corporation authorized said Archibald to draw any moneys belonging to it and on deposit in any bank or with any corporation or person on his check, signed by his name as president of the corporation; that he had no money credited to his individual account in the Commercial Bank of Madera; that the defendant admitted having received the sums of money involved in the amount in dispute; that the checks through and by which said sums were paid to defendant by the deceased were issued on said Commercial Bank and signed by said J. F. Archibald as ''President''; that said money has not been returned or repaid to either plaintiff or to the deceased; that the deceased in his lifetime stated to the secretary of the corporation that said loan had been made to said defendant.

We think the evidence and ''the presumptions reasonably arising therefrom'' strongly tend to establish the material averments of the complaint, or at least sufficiently so tend as to compel, under the principles as declared by the courts, a denial of a motion for a nonsuit. These facts must, as seen, be assumed upon the motion to be true, and, so assuming them to import verity, and giving them full effect, is there any ground for doubting that they are of sufficient probative force to persuade the conclusion that the defendant was indebted to the plaintiff? The fund drawn upon to secure the money received by the defendant is shown without question to have been that of plaintiff. The authority of Archibald to draw the money as indicated is under the proof equally without question or doubt. The receipt of the money by the defendant is an uncontroverted fact in the record, and that the deceased was acting for the corporation and not for himself individually in the transaction with the defendant is an inference or presumption of fact reasonably arising from the manner in which the checks were signed and from the fact

that the fund upon which they were drawn was that of the plaintiff.

It must certainly be admitted that the last-mentioned fact warrants a much stronger inference that the transaction, so far as J. F. Archibald's participation in it was concerned, was by and for the plaintiff, than it would afford in the establishment of respondent's contention that Archibald acted in his individual capacity in loaning the money to defendant. It is true that there is no evidence of the history of the transaction to be found in the records or books of the Archibald Estate, but this circumstance, in our opinion, does not materially detract from the strength of the other testimony, for such omission may or might be accounted for upon reasons perfectly consistent with contractual relations involving the transaction between the plaintiff and defendant. Whatever significance might be attached to the circumstance, either for or against the contention of plaintiff, by the jury or the judge acting as such in the determination of the facts upon the merits of the case, is a matter which cannot concern the decision upon the motion. If the other admitted evidence tends to prove the material allegations of the complaint, the circumstance to which we refer is, as to its effect upon the ruling upon the motion, of no importance in any point of view. The same observations are equally applicable to the point established by the evidence that the president of the corporation was accustomed to liquidating personal or private accounts against himself through checks upon the bank, signed by him as "Pres." There is nothing in this fact necessarily incompatible with the contention that Archibald, in loaning the money to defendant, was acting for the corporation. The findings of fact and conclusions of law filed by the court below were, of course, unnecessary and inappropriate. In fact, the learned judge of the court below, in his written opinion, declares that "while undoubtedly this is an unusual and an apparently unnecessary proceeding, still I feel that under the decision heretofore rendered by the Court of Appeal in *Archibald Estate* v. *Matteson,* nothing else remains to be done."

The question raised by the motion, as observed, is one purely of law, and we cannot see how the court's findings of facts from the evidence before it can in any degree aid or

strengthen the conclusion reached, for, as we have seen, the motion must admit the truth of the facts shown by the evidence, and by consequence it is the evidence alone upon which we must rely for light to guide us to a conclusion. The question of the credibility of witnesses cannot arise on the motion, except in so far as the rule requires for the purposes of the motion that the testimony shall be given the full benefit of its probative power.

In his written opinion giving his reasons for granting the motion, the learned judge of the trial court says: " . . . It certainly seems to me that it would be an anomalous proceeding, after the trial judge, in any case, tried without a jury, had determined that the evidence was insufficient to support a judgment, to refuse a motion for a nonsuit, and if the defendant then chose to rest upon the evidence offered on behalf of plaintiff, to order a judgment in favor of defendant. If this course were pursued it would be in effect a confession of error in refusing a nonsuit. The case would be entirely different if the trial were had before a jury, whose province it is to decide the facts, for it is unquestionably the settled law of this state that a nonsuit will not be granted when there is any evidence whatever tending to sustain plaintiff's cause of action."

We think the fallacy involved in the reasoning of the learned trial judge lies in the fact of overlooking the extent of the responsibility in the proof of the ultimate fact resting upon the plaintiff. As we have undertaken to demonstrate, the plaintiff must, in support of his averments, offer sufficient proof to make out at least a *prima facie* case. When he has done this, he has presented a case which he is entitled to have submitted to the jury, which is only putting in another form the declaration of the rule that in such a state of the record when plaintiff has closed his case, the granting of a nonsuit is not justified. When he has thus rested his case, he is entitled to know what excuse, justification or defense, if any he has, the defendant may offer against the claims of his complaint. If the defendant elects to offer no proof, it is then for the jury to determine whether or not the plaintiff, upon the merits of the case, as presented, is entitled to a recovery. And in such case there is, of course, abstractly speaking, no presumption to be indulged as to the truth or falsity of the

5 Cal. App.—29

testimony as given, for, the case being then submitted upon its merits, the judge or jury trying the facts may accord to the evidence such weight as it, not arbitrarily but in subordination to rules of law governing that determination may decide that it is entitled to, or may give it no weight whatever.

The trial judge is also in error in the intimation in his opinion that there is any difference in the power and duty of a court, upon a motion for a nonsuit, merely for the reason that a jury has been waived by the parties and the questions of fact are to be submitted to the arbitrament of the court. The motion is not, of course, addressed to the court, *sitting as a jury,* when the latter has been waived, but is a question of law alone submitted to the judgment and decision of the court, as such, and the jury, or the court acting in that capacity, has no more concern with it than it could have with the decision of a question upon demurrer to a complaint or other pleading.

In the case of *Goldstone* v. *Merchants' etc. Co.,* 123 Cal. 631, [56 Pac. 778], the court says that "the rules as to a nonsuit are the same whether the trial is by the court or by the jury." When, therefore, a motion for a nonsuit is submitted to the court, acting also as a jury, it is not for the court to base its determination of the motion upon what it might do in dealing with the facts as a jury, but solely upon the proposition of whether the facts as proved are such as to make out a *prima facie* case. If the facts upon their face, when plaintiff rests, are sufficient to justify the submission of the case to a jury, then they are, of course, enough to submit to the court when acting as a jury, notwithstanding the court's opinion that, upon the merits, they are not sufficient to entitle plaintiff to a recovery, and, under such circumstances the motion should be denied.

For the foregoing reasons the judgment is reversed.

Burnett, J., and Chipman, P. J., concurred.